Case number 19-4112, Tommy Mays II et al v. Frank LaRose, or arguments not to exceed 20 minutes per side, Mr. Zachary Keller for the appellate. There have to be lines somewhere, and even with something as simple as a deadline, lawmakers need room to operate. But before I get too far into the merits, I'll back up to standing. The Secretary's position in a nutshell is that at least one of the two plaintiffs, Mr. Mays, said enough at his deposition to signal an authentic intent to vote. And because of the timing of Mr. Mays' arrest, he was not able to use the confined voter process, but he would have been able to use the hospitalized voter process. So we do agree with the plaintiffs that that is enough to claim an injury that is fairly traceable. Did he ask if he could vote, or whether and how he could vote? I believe it was a how question, the way he described it in the deposition. And he never directly asked the jailer to provide him a mechanism by which he could vote, right? He didn't ask to be taken. Like, I thought your 30B6 witness said, you know, one option, or she made, was it a he or she? I'm sorry. A she. She made some reference to, well, she said something like, I don't know what the purposes are. And then I thought she said something like, well, in the past, someone's asked if we could transport them to vote. Like, he didn't do any of that, right? He didn't do any of that. And I do want to make sure to clarify that Ms. Seskis did, later on in the deposition, talk about the purposes. But no, I don't think he ever went as far as actually requesting a ballot. I think it was more of a question of, how can I? And you think that's enough? We think it hinges on intent, Your Honor. We think plaintiffs are correct that a person to seek a government benefit that they're not eligible for. What about the line of cases that say, hey, if you don't ask for it, you can't get it? And if you say how or whether, what you're saying is we should interpret that. Why not remand it, because it's a jurisdictional fact that has to be found, arguably, and let the district court determine, I'm just curious, if he was actually requesting it versus the whether or how? I don't think that line of cases would apply here, because the Board of Elections wouldn't have had any discretion, even if he had asked to give him a ballot he did not qualify for under Ohio law. So I do think, really, here it comes down to intent to vote. And Mr. Mays also did have a long track record of voting. The plaintiffs in their supplemental also point to the line of cases that you, if you're ineligible for a government benefit, you don't need to make a feudal request. So we do agree with them on that front. But where we depart, and as I turn to the merits, is how all this plays out when you're measuring the burden on voting. That's because Burdick teaches us that election laws are going to invariably exclude some people from voting. But that doesn't mean all laws are subject to that. I think Anderson Burdick should apply here, because your brief kind of danced around it. We concede that that's what Obama for America held. If we were on the en banc stage, we might have a different position. We've certainly preserved that argument. On the en banc stage, what would you argue? Because I didn't see a clear picture. So at en banc, we would argue that Obama for America blends a traditional equal protection analysis that would apply to the disparate treatment component of their claim, and an Anderson Burdick analysis that would apply to the right to vote portion of their claim. And by wedging those two together, Obama for America actually ratchets up the scrutiny incorrectly for the treatment of non-suspect classes. But we are accepting at this panel level that Obama for America applies. So if you used a straight equal protection analysis, it would be rational basis? Correct, Your Honor. There's no suspect class? Exactly, Your Honor. There's a fundamental right to vote. So the fundamental right, that's the right to vote claim. That's Anderson Burdick. We don't dispute that that applies in terms of having a Saturday deadline. But on the claim that hospitalized and jail voters are being treated disparately, those are non-suspect classes. Turning back to measuring the burden, it's not a hindsight after the fact measurement. Because any deadline, if you show up at 735 to the polls... You agree that under Obama for America, if that governs, we have to analyze this equal protection claim within Anderson Burdick, that essentially intermediate scrutiny applies then? Not exactly, Your Honor. Obama for America involved early voting. It involved a certain group getting a benefit that a different group didn't get. At that point, isn't it just the same intermediate scrutiny? No, Your Honor. We would concede that Anderson Burdick applies. But Anderson Burdick in itself is a sliding scale where if you have a minimal burden on the right to vote, it is rational basis scrutiny. And we think it is a minimal burden here. Think about it in terms of quantity, repeatability, and avoidability. The quantity of voters at stake is a small number. These are idiosyncratic circumstances that presumably affect a small number of voters each election. And I say presumably... But any exception would create that situation in some ways where a distinguishable class was suing. But it's an individual right. So why do I care about quantity? It's an individual right, Your Honor. But Anderson Burdick tells us we have to measure the burden on voting. And this sort of gets to the split in Crawford between the plurality and the concurrence. The concurrence says you do not measure the burden by individual impact. Even the plurality, though, says we're not trying to get at life's vagaries. That's why a challenger, even under that plurality special burden test that it didn't foreclose, has a burden of coming forth and showing... You said that you apply Anderson Burdick, right? I'm sorry? Even Scalia conceded you apply Anderson Burdick in this. And so why... Okay, get past quantity for a second. Go to the next two, because I'm not convinced that it's not a moderate burden. Okay, past quantity, there's the repeatability factor. Some election laws, like an identification requirement or registration, are going to hit the same voter election after election if there's any underlying problem. This, however, is a once-in-a-lifetime event for any single voter. It's not just being arrested. It's being arrested in this three-day window and then not being able to make bail. So there's no repeat burden, and that's different from a case like Obama for America where the voting hours would have been again and again for the same voter. And then there's avoidability. And that's the idea that Mr. Nelson, Mr. Mays, and any other voter in Ohio has the ability to avoid unforeseen circumstances near an election day by voting early over the month-long period that Ohio offers. This court recognized in Ohio Democratic Party that Ohio is a national leader when it comes to early voting. And this dovetails into the line drawing. Are there any cases, though, that apply rational basis when there's basically a facially discriminatory statute? I mean, all the Anderson-Burdick, I don't understand how Anderson-Burdick applies in this equal protection context, but all the Anderson-Burdick cases involve generally applicable laws, right? There is no these voters get this and the other voters get that. So if you have this distinction that's done by statute. Other than Obama for America. Other than Obama for America. Well, that one applied intermediate scrutiny. Are there any that apply rational basis? Well, McDonald said that even in the equal protection context in elections, there's wide latitude. I know McDonald's been narrowed in some ways, but that principle has never actually been contradicted by the Supreme Court's cases. Even in Obama for America. But the answer to Judge Nalbandian's question is no. There's no cases that apply rational basis in the equal protection context. I believe Griffin versus Rupa from the Seventh Circuit about whether working mothers could vote either applied rational basis or something very similar to it. I would also point out that even under the Anderson-Burdick sliding scale, rational basis is the standard when it's a minimal burden on voting. I do want to go back to the line drawing principle and think about it both on a macro and a micro level. On a macro level, this court recognized in Obama for America that anybody can be suddenly called away from the polls on or near election day. So plaintiffs want to make this case just about jails, but we're not really talking about just the late jailed scenario. Think about traffic accidents, weather emergencies, family deaths, work emergencies. Anybody can be suddenly called away on the eve of election. Surely the state doesn't have to stand trial for all those scenarios. So that seems reasonable, but can I just ask you about, so one of the things you say in your brief, and I think below and here, is that jail voting is more difficult than hospital voting, right? We say that a lawmaker, because of the relevant differences between jails and hospitals, could reasonably think, at least on a per-request basis, that it is more difficult. How do we analyze that? Because it seems to me, so to get to that point, that this is a factual question, and maybe I agree with you to the point that there's a factual dispute, but also doesn't that require vacating and remanding? No, Your Honor. Certainly the court shouldn't have granted the plaintiff summary judgment, but this is actually a classic case where the defendants are entitled to summary judgment. It's about constitutional law, and it's not about whether particular facts are true or false. It's about the legitimacy of a legislative judgment. And the test under the... Can I stop you there? Sure. And I'm sorry to interrupt you, but the hospital is saying, or the plaintiffs are saying, look, it's harder in the hospital, I think they said something like, because the jail can bring everyone to you. It seems to me you contest that and say, well, it's hard in a jail, and we've got to send people who have security classifications, all these things. Isn't that a classic factual dispute? No, Your Honor. I think we need to back up to the legal rule. So Obama for America asks a very typical equal protection question, and that is whether the two groups being compared are alike in all relevant respects. That's page 435 of the analysis, and it also repeats the black letter equal protection law that classifications are not forbidden. So the only thing we need to show here isn't the overall measuring of difficulty. All we have to show is a relevant difference between the two groups from which a lawmaker could reasonably distinguish the two. And here I think there are at least two relevant differences that are entirely undisputed on the record. One, we have uncontradicted testimony that jails sometimes require background checks. So not any board employee can go to them on Election Day to vote a voter. By contrast, you have... Could security alone be enough? Like, could the state win just on the security concern alone without anything else? It could, Your Honor, because Obama for America says that any relevant difference allows for the distinction, and that makes sense when you're talking about non-suspect classes. But I also make the comparison between the background checks in jails and the undisputed evidence on the record that shows with hospitals, boards of elections are able to pick whatever employee is the most available on Election Day to go vote the voters, so there's more flexibility. Certainly that's a relevant difference. And I know... Do you send people to the jails already on the Friday before? We are, Your Honor. Boards differ in exactly when they send. On this record, I think it's always before Election Day. It's always on that Friday, and you send two people over there, and you get all the prisoners together, and they vote. Why couldn't you do that on Election Day at noon or something? Same two people. It'd be a very different process in the sense, for one, you've got jail voters, or you've got the people who do jail voters also often do the hospitals, or they're doing other duties on Election Day. Butler County, for example, testified that its permanent employees do the jail voting, and they're not available on Election Day. But I think the bigger picture answer might be that you can't compare the current system under which the election officials are able to give lead time to the jails so that they can locate inmates to a new system. Do you have any evidence you point to in the record that shows security? Because you made this argument in your brief that says security concerns are greater on Election Day, or is it just that you... Because it seems to me a logistical problem as you lay out in your brief, but I want to understand why it's a security concern that's different on the Friday before. It's not that the security concern for the jails is different on Election Day. It's that when you are doing things on Election Day, when the election officials is the busiest time of the year for them, to have to have pre-screened background check employees, only that pool versus hospitals where you can send anybody... You can see it's not a security concern. It's a logistical nightmare. Not quite, Your Honor. Certainly, the security concerns of the jails add time to the process in that Lieutenant Fisher from Butler County, for example, talked about how they screen contraband. So that is a more intensive security process that an election official has to go through than they experience at the hospitals. No, I understand that. But my point is that seems logistical to me, not a security concern. I would agree. And the big picture is that jails, at the very least, present logistical challenges that are not present in a hospital setting, and all Obama for America requires is a relevant difference on the disparate treatment. Can I ask you a separate question, which I didn't see in your brief, which is, Bell v. Wolffish and a whole line of cases say that prisoners are different as a matter of... They're not similarly situated to non-prisoners. Is that a threshold question we have to ask before we get to Anderson-Burdick and equal protection analysis? And if so, I mean, you argue they're not similarly situated. Why not point to Bell v. Wolffish and that line of cases? Am I missing something about that? I think what we're probably doing is just pointing to the underlying reasons of those cases. But I do think it's a threshold in the sense of Obama for America's disparate treatment analysis showed... So I'm sorry to interrupt you because I've been thinking about this. If it's a threshold, do I have to look at whether the distinction is rational? Is that part of the threshold inquiry? Do I do Anderson-Burdick no matter what? I think that's built into the relevant difference. So if there was a distinction that just has no rational bearing on treating these groups differently as to this particular voting, then you wouldn't be able to rely on a relevant difference if it's unreasonable. So I think that's built in to the standard already. If prisoners are not similarly situated, then we don't do equal protection, right? Because you're treating somebody who's different and you're treating them different. We would still have to do the burden analysis under Anderson-Burdick. Just the abstract burden analysis. Does the Saturday deadline make sense? I see that my time's up. May I answer? That's correct, Your Honor. So you would have, if they're not similarly situated, we win the desperate treatment aspect of the claim. And whether you're couching it in terms of equal protection or the First Amendment claim, then we would do the Saturday noon deadline analysis. And because this is a minimal burden on voting, all deadlines are going to exclude some people by their very nature. But that doesn't mean that the state doesn't have flexibility to set them. Judge Merritt, do you have any questions you'd like to ask? No, not right now. Do you have any? Can I ask about the class action? Yeah, absolutely. Let me ask you about the class action. Is there an order of operation? Do we have to decide the class issue before the merits, number one? Number two, you're asking for judgment in your favor, a reversal in judgment. If you were to win that, would we have to get to the class issue at all? So I think the short answer is whatever order you do them in, I do think you have to decide them both. If we were to win on the summary judgment, it would honestly benefit us if the class stayed in place. But I don't think that's the even-handed answer because I think the class issue is necessary to be decided so that everyone knows going forward what the preclusive effect of this is. Why, if we publish our case, what's the difference? The difference is that someone could take the case beyond the panel level at the Sixth Circuit, a future plaintiff, if we were to win, versus if they are precluded, they wouldn't get to even start. Why wouldn't Kraft then have applied to this case? Because what the plaintiffs want is just a directive from the Secretary of State. So why is there even a class action to begin with? They're just asking for a directive that would apply to every 88, every board of election in every county in Ohio, right? Yes, Your Honor, and we argued Kraft below. We didn't fit it into our appellate brief. We decided to focus on commonality, typicality, and ascertainability. But you are correct that the Secretary is going to take whatever lessons apply from this case and apply them faithfully. Wouldn't applying Kraft create a problem because Ohio could continue doing what they're doing if it doesn't apply to a class? In other words, imagine the plaintiffs win, but we say no class, and we issue a decision. Couldn't different plaintiffs or couldn't Ohio continue doing what they're doing if there's no class? Technically, yes, Your Honor. The assumption that's underlying Kraft is that government officials, especially where, like here, they put on the record, we're going to follow it, act in good faith. But you are correct that there wouldn't be the same level of preclusion without a class. And then the flip side is if you don't have a class but you win on the merits, presumably you agree they could continue to challenge, right? Yes, certainly this court's decision would have prudential effect, but it wouldn't be a preclusion issue. Anything else? Judge Merritt, anything else? No.  Thank you. I'll reserve the rest for rebuttal. Thank you. Good morning, Your Honors, and may it please the court, Mark Gaber for Appalese. Plaintiff's lawsuit is about Ohio's unequal treatment of two categories of statutorily recognized confined voters. But this appeal is about the obligation of a party opposing summary judgment to come forward with actual evidence as opposed to suppositions. What do we do? Sorry to interrupt you so early, but what do we do with Bell v. Woolfish in that line of cases that say prisoners are inherently different? So that line of cases establishes an obligation on the state to do more than it would have to do for other groups of, in this case, voters. Why is that? Explain that to me. Well, because they are in the state's custody. So while the state may not have to provide a halal meal to someone who is just in society, when that person is in the state's custody. Sure, that's to comply. But what they also say, right, is a ton of rights are limited, and we can limit rights of detainees, both pre-trial and post-trial, in a way we can't limit to the general public. And it revolves around security concerns. And so if the state has, quote, unquote, legitimate security concerns, then why isn't Bell v. Woolfish, and I had my clerk do a quick search. There's tons of circuit cases saying, look, they're just different, and states have no obligation to treat them the same. Pre-trial detainees may not be punished because they are in pre-trial detention. The purpose of pre-trial detention may be to. But they're punished in all sorts of ways. I'm not saying punished is a bad word, but their rights are restricted in all sorts of ways while they're pre-trial detainees. They don't have Second Amendment rights. They don't have Fourth Amendment rights. I mean, First Amendment even is restricted. But there's certainly nothing about voting that would be related to the security concerns. And we dispute the legitimacy of the security concerns as an issue. But the limitations must be related to ensuring that the detainee is available for trial and ensuring the safety of the public. And literally preventing an eligible voter from voting. How are they preventing? Because set the hospital aside for a second. It's no different than any other voter that has something unexpected happen that can't get to the polls. So they get in a car accident. Does the state have to bring them a ballot? What if it's a highway patrol officer that hits them? Does the state have to now bring them a ballot so they can vote in time? What if they're unexpectedly called out out of the state? Does the state have to give them a ballot? No, Your Honor, because those people would not be similarly situated in that, one, Ohio has recognized by statute that these two categories of voters who are in identifiable locations where the Board of Elections has a relationship that they are already coming to them, that there is a predictable... What if an old age home was run by the state? They'd have to do the same thing for them if someone checked in in the time frame? No, Your Honor, because, again, it's a matter of similar situation that there is not an... Typically, there is not an unexpected entry into a nursing home facility. But isn't your class too broad? Because what about the point the state raises that people that knew they were going to have to turn themselves in Friday or Saturday had to vote ahead of time? Those people, as we say in our brief, are not part of the class because they are not arrested. They go to the prison, to the jail, and turn themselves in. And so they're just simply not part of the class. The only group of people that are left for the state are those that they say are aware that they are committing some sort of violation. And that's one of the reasons that the court found it necessary to have a class in this case, because in their papers below, the state said that the county boards should be making determinations about whether the person who was arrested should have known based on whether they had consciousness of guilt. And I think the district court found that to be a serious problem for the Board of Elections to be engaging in. Going to... This is Judge Merritt. I'm not with you there, but I'm in Nashville with the video. What is your position about the McDonald case and whether that's still good law or not good law? And to what extent? Because it's a very similar case in many ways. So what's your response to that? So the aspect of McDonald that requires you to show that there has been an absolute prohibition on the right to vote, that is no longer good law. This circuit has recognized that you don't need to show an absolute prohibition. You simply need to show that the right to vote... The Supreme Court, this circuit, we can't overrule McDonald ourselves. So where has it been overruled? In both the O'Brien case and in the Goosby case, the Supreme Court recognized that McDonald was about the factual record in the case, where there was no factual record about the alternatives to voting. In this case, clearly, and the state concedes this, that these folks are unable to vote. This court has held that this group of voters is unable to vote. Well, they're able to vote, they just can't vote in the narrow window, and McDonald said you have no constitutional right to an absentee ballot. Right, and O'Brien... And that was unequivocal and without... So why, I mean, I understand what O'Brien did, but O'Brien said it's wholly arbitrary because prisoners in one prison could vote and prisoners in the prison in the county over couldn't, or even your cellmate could vote and you couldn't. So it was vis-a-vis each other, which makes perfect sense. Now you're similarly situated. You're both prisoners. O'Brien also relied on the fact that people who had medical emergencies could not vote, and that was one of the factors in the equal protection analysis in O'Brien. There's no dispute in this case that people in this position are unable to vote entirely, and, in fact, in their district court briefing... Well, they're able to vote. They just can't vote in the window that no one else in Ohio can vote except hospital voters. Right. So their right to vote still exists. It's not a complete suppression of their right to vote. Can the states have any deadlines? Let me ask you this. If the state... Well, let me answer the first one. Can the state set any deadlines? I'm sorry. I'm interrupting myself. Yes, Your Honor, and this is for one reason why we dispute the notion that the 3 p.m. deadline would be... that we would be saying that that was a severe burden. The state certainly has an interest in the election ending, and the state has said, and the deposition testimony in this case reveals, that 3 p.m. on Election Day provides sufficient time. In fact, the official who does both jail voting and hospital voting said that she can't think of anything... This is county by county, right? So where you have a small county, it would be a lot harder. You have to concede that, right? Actually, the record doesn't reflect that, and in the district court, just logic reflects that, right? If you have one poll worker in, I don't know, Adams County, then you can't do both. So a couple things, Your Honor. The Secretary of State's 30B6 witness testified that the staffing is proportionate to the need, and in the district court, the Secretary took the opposite position. The Secretary said that there are, in small counties, it is likely that there will be elections in which there is no late jailed voter or potentially no jailed voter who comes at all. Can I take you off just a little bit and ask a separate question? Could the state say, because as Ohio says and we've recognized, they make voting very easy. Could the state go back to traditional voting? Everyone votes on Election Day, no absentee ballots, nothing else, just Election Day. That would raise a different problem because, as O'Brien recognizes, if you have voters who are not permitted to go to Election Day and are given no alternative to vote, then for those voters, an absentee ballot would be required. But that's not the system we have here. So you would be fine, I'm sorry. Do you agree, if we just struck down the hospital exception, that would solve the problem? Your Honor, I don't believe that that would be appropriate under the case law. The Supreme Court has, in a recent decision, said that in an equal protection setting, and particularly one dealing with the fundamental right to vote, that the standard approach is to give the benefit to the group that is not currently getting the equal benefit. What about in that immigration parent case where you had the mom getting the benefit, not the dad, and they took it away from everyone? So that clearly doesn't apply across the board. Well, in that case, the court emphasized that the large expanse that would happen to the statutory scheme, and also it was, though it was, the decision was about sex discrimination. This seems like we're rewriting the law now. Whereas if we struck something down, assume erasure is appropriate. If we got rid of something, we're not rewriting the law to make Ohio do more than they want. The Constitution specifically gives them this to decide. So why wouldn't the right remedy, assuming you're right about McDonald's, why wouldn't the right remedy be to get rid of the exception under that circumstance and not rewrite the law? Because, one, it's the fundamental right to vote, and the state has made a decision, the legislature made a decision that it cared to offer this. They could make that decision again. You could go to them the old-fashioned way and convince them, hey, the court just got rid of the exception you wanted. The only way you can now do this is to do it for both, and that's a different calculus for the state. Maybe the state says, we don't want to expend those resources, so we'll do it for none. That's constitutional, it seems to me. So why isn't the only remedy that's appropriate in this circumstance not to force the taxpayers to pay more, but to take it back and then let the taxpayers decide? Well, one, the premise that the taxpayers have to pay more, I believe, is not correct. But, two, in O'Brien, the Supreme Court did not say, New York, you can't give absentee ballots to anyone anymore, because you may not have wanted to do that if you knew that you were going to have to give them to jailed voters. So in the fundamental right to vote context. I thought in O'Brien, and you should correct me if I'm wrong, because you know it much better than me, I thought in O'Brien they said it's wholly arbitrary, you can't treat them differently, but they didn't say one way or another we're rewriting the statute. They just said you can't treat these people differently. No, in O'Brien, the court said that if there is no alternative means for a group of voters to vote, the state has to give them an absentee ballot. That is then constitutionally required, because it's not about a right to an absentee ballot, it's about the right to vote. And it is uncontested that these voters, and the district court, the secretary characterized it as facing an insurmountable barrier to having access to a ballot. Where did they say that? Because what they say is it's a burden on the franchise and denied equal protection, and then they remanded it. I didn't see, did they say specifically the state must do X and not Y? In the decision, I believe, Your Honor, the state references the fact that there's not a right to an absentee ballot except where the record proves that. No, they definitely do that, but it wasn't clear to me, and you should correct me again, it wasn't clear to me that they ordered the remedy you're trying to get us to order here. Does that make sense? From memory, I don't know the exact remedy of the decision. Thank you. So it is undisputed that the burden here is extreme, and the state in the reply brief recognizes that if notice is not given when a deadline has already passed, that that's akin to the effect of denial. Can I ask, can I interrupt you again? Let me read you the paragraph that I remembered and see if I'm misinterpreting this. Because it says, and I'm going to summarize, and then if you want I can read anything you want because you probably don't have it. The construction given the New York statutes by its trial and appellate division may well have been a reasonable interpretation, but the highest court of the state has concluded otherwise, and it is not our function to construe a state statute to the contrary to the construction given by the highest court of the state. We have no choice, therefore, but to hold that as construed, the statute denies them equal protection of the laws. But they don't say you have to go one way or another. It's not, they're not picking there. They're just, and then they remand it. So that's their specific instruction. And I believe on remand, Your Honor, that the result was that the absentee ballots were given to the voters. Sure, it may be, but my point is that then New York had the choice on remand, presumably, but the Supreme Court didn't say you have to pick the one, which is what I thought you were saying. Maybe I misunderstood you and I apologize if I did. I am aware of no case in which when a state has decided to provide a right to vote, a benefit that furthers the right to vote to one group of voters, that the response to an equal protection challenge has been to take away that. So isn't this the one-way ratchet? You're saying the only, if the state gives a right, we can extend it, but we can never let the state cut it back. And this is the thing that the case before O'Brien that I'm now blanking, McDonald said that, look, Illinois is being generous here. And God forbid courts start stepping in because what will happen is the states will reel it back. No, it's not a one-way ratchet, Your Honor, because this is an equal protection decision. And actually the district court's injunction on its face. But any time it would be an equal protection decision, I'm sorry to interrupt you, any time it would be an equal protection, it would be a one-way ratchet. You would always have to extend whatever you've given to everyone, in essence. Because as soon as everyone, and you're saying they're similarly situated, so I guess I'll give you that. So anyone that could arguably be similarly situated. It's not a one-way ratchet because the ruling, unlike the district court's ruling in the Golden Week case that was before the Sixth Circuit, is not that the legislature has to provide this benefit. But if the legislature, and this is in the district court's injunction, unless and until the legislature changes the deadline for the hospital group, it must give the same deadline to the late jailed voters. Why is that not an order to the Ohio legislature? You better change this deadline. Until you do, the Secretary of State must issue a directive that does X, right? I mean, it's like, until you change the deadline, it seems to me like it's a hammer over their head. You better change this deadline. I think it's actually deference to the legislature, Your Honor, for this very point. To recognize that this is not a one-way ratchet. That this is tethered specifically to a deadline that the state has chosen to extend. Could we give deference to the legislature? Could we say, Ohio, you've got to pick one of two things. You either have to extend this to prisoners or you have to take it away from people in hospitals. Would that be an acceptable remedy? And let the state decide. I think part of the issue is that this involves the fundamental right to vote. And part of the issue is timing. But that wouldn't be – Are you saying that every prisoner, no matter what, must be able to vote all the way up until Election Day? And do you have any case in the country that says that? No, what we're saying is that everyone who is eligible to vote, who is held in state custody – and this circuit has recognized that whether or not the state is the one causing it is important in the Ohio Democratic Party case. That because it was non-state-caused circumstances in that case, the burden was lower. Where the state is causing the burden, it is a higher burden. And there is simply no case that says that you – How is the state – I mean, the state's got an argument just as good, which is the person caused the burden by beating their wife or doing whatever they did. These are pretrial detainees whose innocence is presumed. And so this court can't make the judgment that – Does the law have to be nationwide that all pretrial detainees, the state has to allow to vote? And they have to do whatever it takes to allow them to vote? This is an equal protection about a specific statute in Ohio. And so this case doesn't have that sort of ramification. It's about if you give one class of – No, no, no, but we took away the equal protection thing with the option that the legislature – and you said it burdens the right to vote. So then if that's the case, it has nothing to do with equal protection. Do you see what I'm saying? Well, then that's an undue burden claim. And on that point, I would just say that the state's request that this court decide when the district court has identified factual – material factual disputes, I believe it's paragraph 16 in its opinion, on the undue burden claim. It is wholly inappropriate to ask this court to render summary judgment in the state's favor on a claim the district court did not decide. I'm unaware of a case – I thought the district court indicated in a footnote that it was unlikely to succeed. The district court was framing it as – not as an as-applied challenge, but as a facial challenge, and that is not correct. This is not a facial challenge to the deadline. But why can't court of appeals always decide if the record's complete? But the record is not complete, and that's the district court's point. He identified factual disputes on the issue about the burden, about what sort of absentee ballot request the board of elections can take. Can it be written? Can it be in phone? What is the burden? And so that request is wholly inappropriate. And I just – I want to also on the secretary's request that this court render judgment in their favor on the equal protection claim. We believe that we put forward a prima facie case for a similar situation. The district court noted that on the security issue that the secretary did not put forth any evidence. And the secretary says that it's about the timing. And the reply brief says that the security adds more time on election day. Well, the election – that this somehow matters on election day, that argument was never raised in the district court. But more importantly, there's nothing in the record that supports it. The official from Franklin County who does both jails and hospitals was specifically asked, can you think of anything about the jails as opposed to the hospitals that would make it different for the board on election day to print the ballots, determine the eligibility, and deliver them to the jails? And she said she could not think of a single thing. Now, that in and of itself is a prima facie case for a similar situation. And the jail officials also testified. Lieutenant Fischer, it doesn't matter to him whether they come on Tuesday. It's going to be the same to the jails. And so there's no evidence that there is more time spent because of security as it relates to the timing. It's just simply devoid of that in the record. Can I ask you one question about class cert? And it's the same question Judge Nalbandian asked. Do we have to decide the class certification question if the state were to win on the merits? Well, of course, I would reject the premise that it's even possible for anything other than a remand if the district court disagrees that we were entitled to summary judgment. Okay, so let's assume it's a remand. Do we still have to decide the class certification question? If this court remands, I don't think it has to decide the class certification. And now go with the state one. Do we have to decide if the state wins? No, I don't think so, Your Honor. Why do you—why is the class even necessary here? I still don't—the relief you would get is a directive, the legislature change the law or Secretary of State issue a directive. That would apply statewide. Why do you need a class? Why is a class even appropriate under Kraft? Sure, so two issues, Your Honor. One, just as a practical matter, there were all sorts of mootness potential concerns, and the Supreme Court has said if you bring these as a class, that the class certification relates back to when you filed the motion. You won't moot out the plaintiffs if they get the relief, which happened in this case. And I would just point out that the fact that Montgomery County was able to deliver the ballots and it took 20 minutes, and that's testimony in the record, 20, 30 minutes, and that it was no problem on Election Day is at least a material factual dispute as to that issue. But with respect to Kraft and the necessity doctrine, I think, as I said, the district court, and as we were, were concerned by the secretary saying on the one hand, it's not necessary, we'll apply this injunction to everyone. And then on the same page of their class certification response brief, saying it depends upon whether or not the person knew that they were committing a crime and that those people,  to see by the board whether that was something that had happened, that is wholly inappropriate and would raise a whole set of other constitutional questions. I see that my time has... Why do you need a class? I'm still a little bit confused about that. If you got the relief, presumably the relief you would ask for is not just this person gets to vote, it's the directive needs to be issued. If the Secretary of State were to issue the directive and it were followed, then the class wouldn't be necessary for the relief to be in place. Now, I think the Supreme Court in the Shady Grove decision has put the end to this necessity doctrine when it said that so long as you meet the requirements of Rule 23b-2, you are entitled to that class. And so I think that necessity actually is no longer a proper question for courts to consider. Judge Merritt, anything else? No. Thank you very much. Thank you. Your Honors, the way to get proper deference to the legislature in this case kicks in well before we get to any remedy. It's by being faithful to the flexible deferential constitutional standard Anderson Burdick recognizes that for any cases involving less than severe burdens, the presumption is that reasonable election rules pass. This Court has said repeatedly in cases like legislative choice in Ohio Democratic Party that the state does not have any obligation to produce exacting empirical proof for any of its laws. It's plaintiffs that bear the burden on their claim and this is a classic case for summary judges. It's a legal question about the legitimacy. Haven't we said in intermediate scrutiny cases that the defendant bears the burden of proof to justify the law? In some types of intermediate scrutiny cases that might be true, like a gender. What's the Beale Street sweep case? Is that Cole? We said that in that case the city had the burden, right? And I believe that was a First Amendment case. So I'm not debating as a general... The state bears the burden, right? As a general principle, but that's just not Anderson Burdick. Anderson Burdick is not the classic form of intermediate scrutiny. I'd point the Court to the Clingman case and the Timmons case that hold that when there is a less than severe burden, the presumption actually starts in favor of the state. And that makes sense because if you step back to what Anderson Burdick is trying to do, the ability to set the time, place, and manner of elections is expressly given to the states, and they need room to operate there. And that's why, although we certainly disagree with aspects of the Obama for America decision, the standard it set forth for disparate treatment claims on page 35, it's important to remain faithful to that. If there is any relevant difference between the two groups, the constitutional question ends, it becomes a policy question. What plaintiffs are really doing, they're not really disputing facts, they're disputing the legal significance of undisputed facts. Do you have a response, though, to the point about whether there was security concern evidence in the record? I wouldn't label it exactly as security concern evidence. There was certainly evidence that even under the current system, which allows for advance planning, there was sometimes problems locating voters. And I'd also point out that in the Montgomery County situation, which was the TRO in this case, something did go very wrong. And that's that because they hadn't cleared background checks, election officials did not actually have direct access to the voters. So they had to hand off a ballot, which presents its own voter security issue. You mean when they were complying with the TRO? Correct, Your Honor. Because the employee, and this goes to the background checked in jail versus freedom to send anybody in hospital difference I was talking about. When they went to the jail on election day with the short notice, they had not cleared Montgomery County's background check requirements. So if you look, this is in the Cavender deposition. They did not have access to the jails. So they had to hand the ballot over to somebody else to have it filled out? That is my understanding. That's a little bit fuzzy from the record. It's certainly clear from the record. They did not have access to the jails. I believe they handed it off to a jail official. So that's a little bit unclear in the record. But it's certainly clear that they had not passed the background check screening. I do want to make a few. Could I ask you a question? Same one I ask your brother counsel. Is the McDonald case good law still? The McDonald case has not been overturned on a few important points to this case. And that's the general principle that even in areas of the 14th Amendment, the state and elections, the state have wide latitude still. And that's consistent with what this court held in Obama for America under the relevant difference principle. I'd also point out that McDonald does set the general principle that is often repeated, that a state shouldn't be punished for going out of its way to accommodate certain voters. And there's certainly no right to an absentee ballot. In what way has it been modified? I mean, has it been modified in this case? Sir, we don't dispute that O'Brien at some level, and I do agree that the remedy in O'Brien is a little bit ambiguous, but we don't dispute that O'Brien would raise a much harder challenge for us if it was a complete no practical system by which to vote type of system. But that's not this. Nothing in O'Brien comes anywhere close to saying that a state can't have a jail process that just comes with a reasonable deadline shortly before election. I thought in McDonald the warden said there would be an inability for those who were detained, physical inability, I'm quoting, to appear at the polls. I honestly don't want to guess, Your Honor. I can't. Okay. That's at 8.04. But we distinguished McDonald in Obama for America, right? You did, Your Honor. I'm not trying to. Okay. I mean, I'm just wondering if that we've already done that in a case that involved early voting or absentee voting, so I don't know. I mean, is there something different about this case where McDonald might be more applicable than it was? Your Honor, we're certainly not running from Obama for America on the relevant difference front. Why would you argue that it's distinguishable because McDonald involved prisoners in this case, doesn't it? I'm sorry. Can you repeat that? I'm sorry. This case and McDonald involved prisoners in Obama for America didn't, and that was one of the ways that it's been distinguished. Well, I certainly think our argument makes that practical point, that the reason why I think that goes to why there are relevant differences between jailed voters and hospitalized voters. I understand my time is up. I do want to make one quick point on timing. That's fine. We are requesting resolution by March 14th. We request resolution meaning either a mandate or if the court doesn't timing such that a mandate could be issued or if the court does not think that is feasible, we renew our request for a stay pending appeal. Okay. Thank you, counsel. The case will be submitted. I want to thank both counsel. It's not often we get such outstanding counsel on both sides to argue a tough case like this, and I can tell you on behalf of all of us, we really appreciate the thoughtfulness you all have put into this and the time you've put into it, and we'll take it under advisement. Thank you.